All right, next we have the case of Ben Winch v. Director, OWCP, and CSX Transportation, Inc. May it please the Court, Tucker Burge for Ben Winch. The fitness for duty of the man at the controls of a train is its most important safety feature. And it's our position in this appeal that at a minimum, a train operator's report of a legitimate illness is a protected report of a hazardous safety condition. When it's here, even the railroad admits that they wouldn't allow this impaired employee to operate or work in close proximity to trains in that condition for safety reasons. I don't disagree that it could be hazardous for a sick employee to work on the railroad, but I'm concerned about the purpose of the statute and whether this is a hazardous safety condition that the statute was meant to address. Because I think the statute was directed toward conditions that occur in the railyard or something on the job. Can you respond to that argument, please? A sick employee at the controls is certainly at the job. And first, I'd say that's not how the board ruled. It's not how they stated it. They left open the possibility that had he provided more information, and at the time of the call, that he wouldn't have been terminated, that he would have engaged in a protected activity had he said, you know, I'm vomiting and described all the other flu-like symptoms. If he had said, oh, by the way, it's a safety-related thing. But second, given Congress's long history of protecting employees from being on or around or operating trains in an impaired condition, because at the railroad, even a momentary lapse of coordination or attention can have catastrophic consequences. Since 1907, we said we don't want employees who are fatigued to be on these trains. And over time, those have been expanded. So now we have pilots, we have air traffic controllers, we have truck drivers, all who have these protections, these hours of service protections to prevent inattention that originated with railroad workers in 1907. And since that time have gotten lower and lower. And Congress had that in mind. That makes a lot of sense, that we don't want to have workers present who are incapable of doing their jobs because it is a safety hazard to the public and to the other workers there. But I'm not sure that this particular statute that you are trying to use accomplishes that function. I wonder if you could speak to what the Third Circuit said about the statute in the Trans-Hudson case where, among other things, the Third Circuit said, you know, one of the big problems would be that we would have to accept this idea that Congress somehow silently created a statute that allowed railroad workers to take indefinite sick leave. And that seems like a far leap to take, especially when we have the FMLA and other statutes of that nature. He didn't qualify for FMLA. He had a serious medical condition, but he only got two days off. He didn't make the 72-hour requirement answers that question. Well, it doesn't answer the question because the question is indefinite medical leave. The way that you're asking us to construe the statute would allow for indefinite medical leave. And that does seem contrary to Congress having enacted specific statutes that are applicable to workers that limit the amount of leave that an employer is obligated to provide to 12 weeks in a 12-month period. But, I mean, that's what I want you to address if you don't mind. Well, the PATH decision dealt with a different provision. The one that we're under was passed in 2007. The C provision under the same act, those amendments came in 2008. So you're going under the B provision? The B provision, reporting an unsafe condition. Then I have another question for you. Under B to C, one of the requirements is that the employee, where possible, has notified the railroad carrier of the existence of the hazardous condition and the intention not to perform further work or not to authorize the use of the hazardous equipment, track, or structures unless the condition is corrected immediately or the equipment, track, or structures are repaired properly or replaced. So one part of it specifically deals with hazardous equipment, track, or structures. And the other part requires that the condition be corrected immediately. So I could understand how, let's say that there were somebody else who was sick at the railroad and was impaired in doing his job and your client reported that as a safety condition. That could be corrected immediately by the railroad by requiring that person to leave. But how does the railroad correct immediately the situation of your client being sick in such a way that would allow your client to report back to work immediately? They call another train operator to do it. That's the only thing they can do. How does that allow your client, though, to report back to work immediately? Which it seems to me that subsection C anticipates would be required. I mean, it doesn't seem to make sense. Well, there are three parts to B1. The one we're traveling under here and that we were discussing is that B1 says reporting in good faith a hazardous safety condition. You're asking me about B2. B2 specifically does not apply to B1. And what you're doing or what these cases have done is they've borrowed from B2 and they've brought it up to a provision that the Congress has said specifically don't apply those extra criteria to this type of reporting. I don't have a problem with the interpretation that it has to be some sort of and really don't disagree that it has to have some connection to the railroad. The PATH case dealing and the Stokes case dealing with someone who didn't show up for a medical appointment away from the job. That's not the same thing. This involves the most critical aspect of operations. Let me ask you about what you just said a minute ago. As I understand it, and I think you just said, you're traveling under little bA, reporting, and also B, refusing. And you're saying that either one of those would have been a protected activity here. But it seems to me in the statute that big A and big B in parentheses are stated in the disjunctive. And in this case, he didn't just call to report a condition that he observed that he thought the railroad should fix. He refused to come to work. And that's what he was fired for. So I'm having trouble understanding how you can circumvent all the requirements under big B by saying that he reported a condition and that was sufficient. In this case, the minimum availability policy covers non-compensated absences. The only non-compensated absence or the only non-compensated report that you can make that's going to get punishment is for being sick. As the ARB said, it's the report and the failure to give more information in the report. But here we are. I'm not sure you're addressing my question. Here we have a refusal to work. He called and he didn't come into work. He reported first. Then he didn't. First he reports. Then he doesn't come in. And then he continues reporting. He continues reporting all the way up until he is terminated months later. And reporting, as used in the statute, includes any and all reporting of hazardous safety conditions. It seems to me your argument would allow someone to completely ignore all the other requirements under B. Because they could just say, well, I reported. It doesn't matter that I refused to come to work. I reported and, therefore, I'm protected. Well, in this case, his reporting goes beyond. His reporting is not only does he give the breaking news that I'm sick. He gives the update at 11. Here are the medical records. He gives more information. This is a safety hazard at the disciplinary hearing. And they agree. But I think what Judge Pryor is asking is, regardless of what else he does, how does that show compliance with the requirements under B.2? Well, they fired him for his report of a sickness. That is part of it. This is a contributing factor standard. This is the in whole or in part. Well, they fired him for an unexcused absence, for not coming to work. For not coming to work when he reported that he was sick. Because only absences for sickness are counted against him and punished. You can't have he could being marked off any other way, reporting any other reason other than sickness, as the ALJ found. But for that, he would not have been brought under any scrutiny at all, and, therefore, we wouldn't be here. Thank you. Thank you. May it please the Court, my name is Andrew Tardif, Council 4 Respondent, United States Department of Labor. I'll be using eight minutes and reserving seven for the intervener. This case is about whether Wynch's ten-second phone call giving his name, identification number, and saying he needs to be marked off sick is sufficient to invoke the whistleblower employee protections of the Federal Railroad Safety Act. The Court should affirm the Administrative Review Board's decision for two main reasons. First, the Board correctly determined that Wynch's exceptionally brief phone call could not, even under the most liberal construction, constitute a report of a hazardous condition. Second, the Board also correctly determined that Wynch's absence from work was not a protected work refusal because the statute requires, where possible, that employees first notify their railroad employer of the hazard before stopping work, and the record lacks any evidence that it was not possible for Wynch to provide that notice. So, Mr. Tardif, you're asking us really to affirm the Board on the grounds the Board decided the case on. Am I correct? That's correct. You're not asking us to take any broader view of the statutory scheme and make any broader pronouncement? No, Your Honor. I think what you're referring to is whether an employee could ever report a non-work-related illness as a hazard, but I think it's unnecessary for the Court to reach that ruling. Would a Chenery case allow us to do it? I believe Chenery would caution the Court to just affirm the Board on the grounds that the Board decided the case. And that would be sufficient here. We could simply do it on the facts. That's correct, Your Honor. Because although the purpose of the act is to promote railroad safety, Congress did not intend to protect employees who call out sick without providing notice to their employer of the connection between their absence and a safety concern. In short, the ALJ committed some clear legal error here. I think this case largely turns on the definition of report. So with respect to the protected activity of reporting in good faith a hazardous safety or security condition, the statute plainly requires that an employee actually put the employer on notice of a hazardous condition. So Winch advocates for an interpretation of report that is largely void of any meaning. However, Congress' use of the term report implies at least the conveyance of a minimal amount of information, namely just basic information about the hazardous safety or security condition. So as the Board put it, even the most liberal construction of that term requires that some information be reported pointing to the hazardous condition. In this case, did the employee really have any opportunity to do that? There's no, one, I think the burden is on the employee to make the protected report if he wants to invoke the protections of the act. Two, there's no evidence that the employee didn't have the possibility to notify. For one, the employee had the employer on the phone. So dictionary definitions show. What prohibits an employee from reporting in multiple conversations? What's your authority for that? I think you certainly could do that. Then the report might be the broader instances in the totality or individual. It's not so much a particular means of making a report. It's the context. It's everything that, as long as information is conveyed. Well, at least at the point when Dr. Horsley faxed the medical records, the railroad had all of the information about the hazardous safety condition. Isn't that right? That's true. But the railroad did not receive that information until after. So I think there's after the absence is. So I think there's two reasons why the report has to be limited. One, it was only argued that the protected report was the calling in and marking off sick and the absence itself. But even if you consider the other information, it came after the absence. And the statute clearly requires that an employee notify the employer of the hazard where possible before doing the work refusal. Mr. Tardif, we're inquiring here about a lot of fairly fact-based issues, very industry-specific issues. Does the agency have regulatory authority to answer a lot of these questions? I mean, are there regulations pursuant to this statute? Or is there authority to make such regulations? The way the board would tend to regulate would be more procedurally. I understand. How about the agency, though? This is what OSHA handles this? OSHA does the initial investigation, and then employees can. Do they have any regulatory? Do they have any rulemaking authority under this act? Again, I believe most of it would just be procedural. And then the interpretations out of the ARB would be sort of how the agency would go about that. So that's as good as it gets? More or less. So contrary to what Winch argues, because the only protected report being alleged is the phone call, the fact finder must necessarily focus on the communication made to the employer in that call. You can't rely on later information. And then with respect to the protected activity of refusing to work, because there are two possibly relevant sections of subsection B which were alleged here, again, all the information became available to the employer after the work refusal. And again, because the statute lays out those three requirements, Winch did not meet the notification requirement. Essentially, the board was interpreting the notification requirement to be the same as the reporting requirement. The board noted that reporting a hazardous condition is essential to the claim. Indeed, the definition of notify is commonly to report. So unless the court has any further questions, I would yield to the intervener. Thank you. Good morning, Your Honors. May it please the Court. Jacqueline Holmes for the intervener, CSX Transportation. I'd like to go first to the questions that Judge Rosenbaum and Judge Pryor were asking my colleague, Mr. Burge. I think there is a square peg and a round hole problem here. This statute, the refusal to work, first of all, it's clearly a refusal to work case. I think you're exactly right, Judge Rosenbaum, that you can't allow an employee to circumvent all those requirements when, in fact, they do refuse to work by claiming it's simply a report of a hazardous safety condition. The refusal to work provision has been in this statute since 1980. It's not new. Other than this ALJ, there are, to my knowledge, no cases at all that suggest that an employee's report of a non-work related injury or illness qualifies as a protected refusal to work under that provision. And the only case law that's out there, some of which Mr. Burge mentioned. Oh, which provision are you talking about? Subsection B or subsection C? It is subsection B1B. Okay. Now, because the Third Circuit case's focus was really on subsection C, wasn't it? That's correct. And just so you all know that since the briefing completed in this case, the Sixth Circuit has followed the Third in that regard. It's a case called Williams v. Grand Trunk at the Arb. Grand Trunk v. Department of Labor in the Sixth Circuit. And the site is 875F3-821. As an old corporate lawyer, I can appreciate your position that you really do want to get a broad ruling here on the interpretation of the statute. But we don't need it here, do we? You don't. That's absolutely right. And doesn't Schoenery pose some problems to us in doing that? I think it does. I agree. I also don't think it's been fully briefed necessarily in this Court, that issue, in all honesty. And the agency left the question open. I think it's the fairest way to put it. In fact, the agency said this was, in effect, an excursion ticket for this day and this train only, right? Correct. Yeah, they explicitly said that. Correct. The agency didn't want us to do anything more than that. It's a very narrow ruling that's fact-bound, I think. That's right. And I think that's on its own a basis, I think, to affirm the agency, right? You have a very narrow, fact-bound ruling saying whatever this statute means, this isn't enough. I did, though, want to be responsive to the questions of Judge Rosenbaum and Pryor regarding what I think the statute means. We certainly don't concede that this would apply in any context similar to this one. I think, and again, there's no court that's found that it does in 35-plus years that that provision's been in the statute. Judge Pryor, I'd also like to address your question to Mr. Tardif. I don't think there's any question that notification could occur over multiple conversations. I think that's right, but they have to occur before the refusal. I think that's the problem. I think here the only thing that happens before the refusal is a 10-second call with name, ID, number, mark me off sick, and that's not enough. As you suggested, Judge Rosenbaum, the thrust of the B-1B requirements, or I'm sorry, the B-2 requirements, which apply to the B-1B protected conduct, just to make it a little more confusing, is that there's a dialogue, that an employee doesn't unilaterally get to decide I'm not going to work. There's a dialogue that goes back and forth there. Absent further questions on that issue, I would like to briefly address the exhaustion question, simply because we did brief it. And as this court noted in Florida Department of Labor v. USDOL, which is in our briefs, where there's an underlying legal issue that can be resolved with the unquestioned facts, it's at least something the court can consider. What I will say about this, the only appellate decision that I'm aware of that is a case called Foster v. BNSF. The district court decision was cited in our briefs. The Eighth Circuit has since affirmed 866F3RD962. And the Foster case adopted, assumed without deciding that the Title VII standard should apply. Under Title VII, as we all know, if I file a race discrimination claim at the EEOC and then I try to bring a gender discrimination in court, I can't do that because it's not exhausted. And I think if you look here at the ALJ's factual findings, there's no question that that's what happened here. Administrative law judge opinion at 30 to 31, he made the following findings, and I apologize, but I'm trying to read accurately. The complainant argued only that Markoff was following a doctor's orders at OSHA. The hazardous condition claim was, quote, not pursued or even raised at OSHA. Neither party addressed and OSHA did not decide whether the Markoff was protected by 20109B. And there was this new legal theory, which is the 20109B theory. It says some contextual factual distinctions and implicates a factual question not presented by the previous theory. Different law, different facts. That's a classic case of failure to exhaust. Where did the ALJ go wrong on this? He used the pleading standard, the standard for amending pleadings, not the standard for exhaustion. And he focused, for example, on the prejudice to my client, and he said you're not prejudiced. You've got to fully litigate the issue. Well, that's not the right question. You don't ask about prejudice when you're looking at exhaustion. It's not designed to protect us. It's designed to protect the integrity of the administrative process. On that point, the board didn't seem to have break into a sweat over this, did it? Well, I think the board just didn't touch it, honestly. In other words, it certainly didn't impede the board's decision-making ability, did it? The board certainly moved along and did not pay attention to this question. But I think that's an error. And that's because they decided on a very narrow ground and looked at the statute and said this doesn't qualify. That is correct. End of case. Correct. And they did not address any number of other issues that we raised, of course. But I do think this one is somewhat different in that the ALJ's factual findings, which are not challenged by anybody, they weren't challenged by the Administrative Review Board, they're not challenged by the plaintiff, and there's no question that they're right, I think make very clear that this claim was not exhausted. This was a 20109C2 claim at OSHA. It changed because there was concern that 20109C would be held by the Third Circuit, as it was, to not apply to non-work-related injuries. And so the theory changed. But there's no question, I think, about that. And I think the thrust, although they do deal with C2, I think the thrust of both the Path decision and the Grant Trunk decision in the Sixth Circuit is that this statute is no elephant in a mouse hole. It didn't, as you said earlier, Judge Rosenbaum, it did not give unlimited sick leave to railroad workers, and that's what they're seeking. Thank you. And for those reasons, we would respectfully request that the Court affirm the Administrative Review Board. Getting to the grounds that the stated reasons that the Court, it was because of the very brief telephone conversation, which they describe as a dialogue. What the ALJ asked questions about until he understood was that this isn't much of a dialogue at all. This is where the employees from, you know, all the eastern United States, all 26 states and the District of Columbia will call into and report and say, you know, mark me off for this reason. And the purpose of that is not to find out, this isn't a 911 call where they're saying, you know, what's your problem, oh my goodness, what can we do to help? This is a situation where the employee marks off and all the crew caller cares about is, okay, who are you, you know, what job did you have, so that they can find the replacement. That's all they care about. This was a two-way call, and although it is true that he did not describe all of the details of his illness, he did tell them that he was sick. The railroad knew that he was a remote control operator who jogs beside moving trains while operating the locomotive on a belt pack, and that anyone who's sick certainly may be a hazard in that work environment. And they didn't ask him any questions at that time. As soon as more information became available, he certainly did provide it to them. The blood test results that showed that he was suffering from a viral infection, well, that blood isn't drawn until the next morning. So he has the infection when they would have him out there and say he's unprotected while operating a moving train by remote control and running beside it, pulling a cut lever and stopping it so that the cars can go on and be switched. That would be the most hazardous, and it's inconceivable that Congress intended to protect employees if their onset of symptoms happened when they get to work. If this had happened an hour into work, they're saying he's protected. But if it happens, the first wave of the illness happens on his way to work, and he calls in sick just minutes before he's unprotected, the purpose of the statute is said under 201.01 is to protect safety in all rail operations, to prevent accidents, to prevent incidents. And that's exactly what his reporting of sick did. As far as exhaustion, we brief this at our reply brief 11 through 13. The cases, the facts, and the ruling all favor us. Under the agency's stated reason that he had to say more, that's not supported by the plain language of the statute. B1A, reporting in good faith a hazardous safety condition, doesn't say that the report is a one and done, a now or never report. And by the time he finished with all his reporting and before they terminated him, they had all of the details that showed that he was objectively ill, and these were so persuasive that even the charging officer said yes, a man in that condition should not be operating trains. If I saw him out there, I wouldn't even allow him on the property. I would send him off the property. And that's what the evidence is in this case. And the law says that you don't add language to a statute. But that's what they're doing. They're saying you have to report a hazardous safety condition in good faith, but you have to report it as a hazardous safety condition, and you have to do it all at once. You can't come back and supplement it. And to require employees to be at risk and go to work sick, really is not what Congress intended. Thank you. Thank you, Counsel.